**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 17, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

        Plaintiff-Appellant,

    v.

ANDY EUGENE SELTZER,

        Defendant-Appellee.

No. 08-1469

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:06-CR-00453-LTB-1)**

_____

Martha A. Paluch, Assistant United States Attorney (David M. Gaouette, Acting United States Attorney, and Dondi Osborne, Assistant United States Attorney, with her on the briefs), Denver, Colorado, for Appellant.

Virginia L. Grady, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, and David E. Johnson, Research and Writing Specialist with her on the brief), Denver, Colorado, for Appellee.

_____

Before **HENRY**, Chief Judge, **SEYMOUR**, and **HOLMES**, Circuit Judges.

_____

**HENRY**, Chief Judge.

_____

The Supreme Court has called the Sixth Amendment guarantee to a speedy trial both an "amorphous" right and a "fundamental" one. Andy Eugene Seltzer's case exemplifies the difficult application of this constitutional protection and particularly, the complexities inherent in the balancing of the defining factors delineated by Supreme Court precedent. The district court granted Mr. Seltzer's motion for dismissal based on a violation of his Sixth Amendment rights. Because we agree that, under the circumstances, Mr. Seltzer's rights were violated, we affirm the district court's dismissal.

## I. FACTUAL BACKGROUND

### A. The crime

A road crew working in Grand Junction, Colorado, discovered what appeared to be counterfeit currency in a trash bag. The bag also contained evidence linking the contents to 2913 D Road in Grand Junction. The Mesa County Sheriff's Office procured a search warrant for the property, which was owned by David Ortego. The search uncovered counterfeit bills, chemicals, and equipment linked to the production of counterfeit currency. The search also revealed several firearms, methamphetamine, marijuana, and a "pay/owe" sheet consistent with drug trafficking. Aplt's App. vol. I, at 0307 (Order, filed Nov. 5, 2008).

Andy Eugene Seltzer was on the property when the law enforcement officers arrived. In the room where he slept, the officers found three firearms and ammunition. Additionally, the officers discovered a wallet containing Mr. Seltzer's identification, two counterfeit $100 bills, and one genuine $100 bill with a serial number matching that found on the counterfeit bills.

In another bedroom, the officers found a computer, which they later discovered contained scanned images of a $100 bill. The law enforcement officers also found a large trash can outside the home, which contained templates that appeared to have been used to print counterfeit bills, images of bills printed on plain paper, handwritten notes, and miscellaneous other items.

B.     The initial indictment

On November 2, 2006, the government indicted Mr. Seltzer and Mr. Ortego on one count of manufacturing a counterfeit Federal Reserve Note with the intent to defraud, in violation of 18 U.S.C. § 471. Aplt's App. vol. I, at 0015 (Indictment, filed Nov. 2, 2006). The government also charged Mr. Seltzer with three counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Mr. Seltzer had previously been convicted of felony possession of a Schedule II controlled substance with intent to distribute) and with one count of aiding and abetting counterfeiting in violation of 18 U.S.C. § 2.

Arrest warrants were issued for both Mr. Seltzer and Mr. Ortego. Law enforcement officers arrested Mr. Ortego on November 6, 2006, and he was released on bond the next day. The officers determined that Mr. Seltzer was serving a sentence in the Mesa County Jail on two sets of unrelated drug charges, and thus did not execute the arrest warrant against him.

C.    Deal with Mr. Ortego

On December 7, 2006, Mr. Ortego met law enforcement officers and was offered immunity from prosecution in return for "tell[ing] the truth" about Mr. Seltzer's participation in the counterfeiting. *Id.* vol. II, at 0406. In response, Mr. Ortego stated that he had no knowledge of Mr. Seltzer's involvement in counterfeiting or of Mr. Seltzer's ownership of the firearms found on the premises. On March 21, 2007, however, Mr. Ortego recanted this testimony and informed the law enforcement officials that he had knowledge of Mr. Seltzer's counterfeiting activities. Mr. Ortego claimed that Mr. Seltzer had offered him counterfeit bills and that Mr. Seltzer owned the firearms. Mr. Ortego claimed that he had no knowledge of the ownership or origin of the degreasing chemicals used to "wash" the currency. *Id.* vol. I, at 0309.

Assistant United States Attorney Wyatt Angelo determined that, based on a lack of evidence against Mr. Ortego, the government should dismiss the indictment against him. AUSA Angelo also decided not to proceed with the

investigation, the arraignment, or a meeting with Mr. Seltzer until after state proceedings on unrelated drug charges were completed.[1]

D.    Mr. Seltzer's Motions for Bond and Appointment of Counsel

In early April 2007, Mr. Seltzer obtained the assistance of Amy Ottinger, a bail bonds agent. Mr. Seltzer appeared concerned about the declining health of his mother and was eager to obtain bond so he could care for her. Ms. Ottinger offered funds that should have been sufficient to secure his release on bond. The Mesa County jailer, however, informed Ms. Ottinger that Mr. Seltzer was under a federal detainer pending counterfeiting and weapons charges and refused to release him.

On April 26, 2007, Mr. Seltzer filed a pro se Motion for Bond Status. In this motion Mr. Seltzer also asserted his right to a speedy trial. *Id.* at 0031. Mr. Seltzer's mother had passed away on April 24, 2007, and in his bond status motion, he expressed his desire to attend her funeral on April 27, 2007. On May 11, 2007, Mr. Seltzer's motion for bond status was struck because Ms. Ottinger was not an attorney and her assistance appeared to constitute the unauthorized practice of law without a license. *Id.* at 0036 ("It is clear that there is no showing

---

[1] The district court pointed out that "[Mr. Seltzer]—unlike Ortego—was never given the opportunity to try to strike a deal and—once Ortego provided testimony in exchange for clemency—was left in the unenviable position of having to defend against Ortego's testimony. I am left to wonder whether [Mr. Seltzer's] shoe would be on Ortego's foot had [Mr. Seltzer] been brought to court first." Aplt's App. vol. I, at 0321.

that Amy Ottinger (Ott Bailbonds) is an attorney authorized to practice law. Upon this basis alone, the motion to strike must be granted."). On June 12, 2007, Mr. Seltzer filed a Motion to Appoint Conflict Free Counsel Without Unnecessary Delay, arguing that had counsel been provided, the district court would not have struck his motion for bond status. In this motion, Mr. Seltzer again asserted his speedy trial rights. *Id.* at 0037–44 (asserting that proceedings take place "without unnecessary delay").

On July 11, 2007, the district court appointed Colleen Scissors to represent Mr. Seltzer. On at least three occasions Ms. Scissors requested that her client appear before a magistrate judge for arraignment. Each time, AUSA Angelo informed Ms. Scissors that Mr. Seltzer would not be appearing before a magistrate judge until the state prosecution was complete.

E.     Mr. Seltzer pleads to state charges

On November 8, 2007, Mr. Seltzer entered a guilty plea to state drug charges in Moffat County, Colorado. On January 29, 2008, the state district court sentenced him to eight and one-half years in the Colorado Department of Corrections for the unrelated state drug charges. On November 29, 2007, Mr. Seltzer entered a guilty plea in Mesa County, Colorado, for other state offenses and, on February 7, 2008, the state court sentenced him to six years in the Colorado Department of Corrections for those charges.

Although Mr. Seltzer pled guilty to state charges in late 2007, the agent in charge of the federal investigation conducted no examination nor tested any evidence with respect to the federal prosecution until June 2008. Further, although the government had charged Mr. Seltzer with being a felon in possession of a firearm, no attempt was made to confirm that status until July 2008 (although there was a preliminary inquiry made with the Mesa County Sheriff's Office prior to the indictment against Mr. Seltzer). *Id.* at 0310.

F.     The government's Superseding Indictment and Mr. Seltzer's Motion to Dismiss

On August 6, 2008, the government issued a Superseding Indictment against Mr. Seltzer. The Superseding Indictment dropped the initial charge for counterfeiting and charged Mr. Seltzer with four new counts of counterfeiting. These charges stemmed from the bills the officers found in the wallet they recovered from 2913 D Road. The Superseding Indictment also combined the three felon-in-possession counts into a single count.

On August 14, 2008, Mr. Seltzer filed an Amended Motion to Dismiss the Superseding Indictment. The motion argued that the government violated his Sixth Amendment right to a speedy trial by unduly delaying the prosecution of his case.

G.     The district court's dismissal of the Superseding Indictment

The district court conducted a careful and thorough analysis of Mr. Seltzer's Sixth Amendment claim using the factors established by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972). Applying these factors, the district court found that the delay in the government's pursuit of the federal charges against Mr. Seltzer constituted a violation of his Sixth Amendment rights and dismissed the charges against him.

The government now appeals the district court's dismissal. The government makes two main arguments: First, the government claims that the delay in the case was justified due to the state's prosecution of Mr. Seltzer. Second, the government claims that Mr. Seltzer suffered no prejudice as a result of the delay.

## II. DISCUSSION

A.     Standard of review

We review Mr. Seltzer's claim that the government violated the Sixth Amendment's Speedy Trial Clause de novo. *United States v. Dirden*, 38 F.3d 1131, 1135 (10th Cir. 1994).

B.     *Barker* analysis

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Establishing the point when a trial has been unconstitutionally delayed is,

concededly, a difficult proposition. As the Supreme Court has readily acknowledged, the "right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitively say how long is too long in a system where justice is supposed to be swift but deliberate." *Barker*, 407 U.S. at 522. Moreover, although the right is somewhat amorphous, the remedy is severe: dismissal of the indictment. Nonetheless, it is the prosecution's burden (and ultimately the court's) and not the defendant's responsibility to assure that cases are brought to trial in a timely manner.

The Supreme Court in *Barker* established a four-part balancing test to establish if the defendant's right to a speedy trial has been violated. These factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his desire for a speedy trial; and (4) the determination of whether the delay prejudiced the defendant. As the *Barker* Court stated, "[a] balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis." *Id.* at 530. No single factor is determinative or necessary, rather all four are considered to determine whether a violation has occurred. *Id.* at 533. We agree with the district court and on de novo review we hold that all four of these factors weigh in favor of a finding that Mr. Seltzer's right to a speedy trial was violated.

1.      Length of Delay

The first factor looks to the length of the delay in pursuing the case against the defendant.  This is a double inquiry.  First, "[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (quoting *Barker*, 407 U.S. at 530–31).  Second, "[i]f the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id*. at 652.

We find that Mr. Seltzer has satisfied the first prong:  the length of the delay crossed the threshold from "ordinary" to "presumptively prejudicial" because it was more than a year.  *See United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) ("Delays approaching one year generally satisfy the requirement of presumptive prejudice.").  "The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first." *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004).  Mr. Seltzer was indicted on November 2, 2006, and the district court dismissed the Superseding Indictment against Mr. Seltzer on November 5, 2008—a delay of over two years.  Two years

is twice the time presumed to be ordinary. *See Doggett*, 505 U.S. at 652 (the greater the delay, the more likely it is to weigh in the defendant's favor).

But to be sure, given other factors, a lengthy delay may not be unreasonable—and, conversely, even a minor delay may be deemed untimely. For example, a court should take into consideration the nature of the charges. *Barker*, 407 U.S. at 531. And even a two-year interval between charges and trial may not be deemed a "delay" when the charges are complex. But here, neither the counterfeit charge nor the drug charges, nor the felon-in-possession charges, were complicated. As the district court noted, "[t]he counterfeiting claims involved little more than the use of commonly-available tools to print—according to the officers involved—obviously counterfeit notes." Aplt's App. vol. I, at 0314. Similarly, the other charges, involving simple possession, were also straightforward.

Here, the government had secured the eyewitness and coconspirator testimony of Mr. Ortego in March 2007, and yet over nineteen months later, in November 2008, it still had not proceeded with the prosecution of Mr. Seltzer.[2]

---

[2] A delay that may seem insignificant may be deemed too long when the case relies on eyewitness identification or the testimony of live witnesses. When such testimony forms a cornerstone of the government's case, delay becomes of great import given the dangers of memory loss or distortion over time or the risk that the witness may disappear or die. Thus, the Supreme Court in *Barker* cited approvingly a First Circuit case in which that court "thought a delay of nine months overly long, absent a good reason, in a case that depended on eyewitness testimony." *Barker*, 407 U.S. at 531 n.31 (citing *United States v. Butler*, 426 F.2d 1275 (1st Cir. 1970)).

Accordingly, we conclude that this factor, along with the nature of the charges, suggests that the government waited too long to bring the defendant to trial. Hence, this factor weighs in favor of a finding of a violation of Mr. Seltzer's speedy trial rights.

### 2. Reason for the delay

Besides considering whether the two-year delay was lengthy and unreasonable, the court must also factor in the reasons offered by the government for not bringing a timely suit. This factor is especially important: "the flag all litigants seek to capture is the second factor, the reason for delay." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). The burden belongs to the government to provide an acceptable rationale for the delay. *Jackson*, 390 F.3d at 1261 ("The Supreme Court places the burden on the state to provide an inculpable explanation for delays in speedy trial claims."). "[D]ifferent weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* (footnote omitted).

Here, the major reason asserted by the government for the delay was the desire to complete the state proceedings on unrelated drug charges before continuing with federal charges. Although the Tenth Circuit has never ruled on whether this is an acceptable rationale, at least two of our sister circuits have recognized this reasoning. *United States v. Thomas*, 55 F.3d 144, 151 (4th Cir. 1995) ("We find this to be an obvious reason for delaying Thomas's federal prosecution. . . . To do otherwise would be to mire the state and federal systems in innumerable opposing writs, to increase inmate transportation back and forth between the state and federal system with consequent additional safety risks and administrative costs, and generally to throw parallel federal and state prosecutions into confusion and disarray."); *United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003) ("Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay that weighs in favor of the government." (internal quotation marks omitted)); *United States v. Watford*, 468 F.3d 891, 902 (6th Cir. 2006) (same). The Third Circuit, however, recently rejected this as a reasonable justification. *United States v. Battis*, --- F.3d ----, No. 08-2949, 2009 WL 4755684 (3d Cir. Dec. 14, 2009). The *Battis* court stated: "Once federal prosecutors bring an indictment against a defendant, they have a duty to notify the District Court that the defendant should be arraigned and appointed counsel, and to bring the defendant to trial

-13-

expeditiously." *Id.* at *5. Further, the court stated that "[t]his duty persists even when state authorities have a strong interest in bringing their own case against the same defendant. The Government cannot indict a defendant and then delay a case indefinitely, without any notice to a federal judge, merely because it is aware of a state proceeding involving the same defendant." *Id.*

We agree with our sister circuits that awaiting the completion of another sovereign's prosecution may be a plausible reason for delay in some circumstances, but that does not necessarily mean that it is a justifiable excuse in every case. Rather, it is the government's burden to explain why such a wait was necessary in a particular case. In other words, the government must make a particularized showing of why the circumstances require the conclusion of the state proceedings before the federal proceedings can continue. The mere fact that the defendant was incarcerated on a previous charge for a portion of the delay does not by itself excuse the delay. *Jackson*, 390 F.3d at 1262 (finding that the state's negligence in bringing the defendant to trial "is not mitigated by the fact that [the defendant] was incarcerated on a previous charge for a portion of the delay"); *see also Dickey v. Florida*, 398 U.S. 30, 36 (1970) (finding that incarceration does not make a defendant unavailable "since there have long been means by which one jurisdiction . . . can obtain custody of a prisoner held by another" for purposes of a criminal trial); *Smith v. Hooey*, 393 U.S. 374, 377

-14-

(1969) (holding that the defendant's confinement in federal prison does not absolve the state "from any duty at all under the [Sixth Amendment] constitutional guarantee"). Thus, the government needs to show that it has a sufficient justification for waiting for the state proceedings in this particular case. No such showing has been made here. And the typical reasons for respecting ongoing state proceedings as a valid justification for delay are not relevant here.

First, there was no overlap in the charges or proceedings—the federal proceedings at issue here are entirely distinct from the state drug proceedings. In *Thomas*, 55 F.3d at 151, the Fourth Circuit noted that one of the reasons for allowing the state court to finish its proceedings before beginning with the federal proceedings was the desire to avoid conflicting motions or assertions in the different courts. But in Mr. Seltzer's case, the charges were different and unlikely to give rise to such confusion.

Second, concurrent proceedings would not be logistically cumbersome. The district court found that transportation between venues would not be burdensome in this case because "[t]he federal courthouse in Grand Junction is a mere five blocks from the Mesa County Jail, and there is nothing in the record suggesting the burden of transporting Defendant between jurisdictions would have been onerous." Aplt's App. vol. I, at 0316. In *Thomas*, 55 F.3d at 151, the Fourth Circuit recognized that transportation costs and logistical concerns are one

of the reasons for waiting for the end of the other sovereign's proceedings. In this case, this does not appear to be a concern.

Third, the simplicity of the charges is also relevant here, because it demonstrates the relatively light burden that proceeding with the federal prosecution would have imposed upon the government. The government's argument for delaying out of respect for another sovereign is stronger in more complicated cases than it is in more straightforward cases such as this one. For example, in *United States v. Grimmond*, 137 F.3d 823, 828–29 (4th Cir. 1998), the government was justified in delaying the prosecution because of the desire to prosecute the defendant and a codefendant together. No such concern is evident here.

Requiring the federal government to affirmatively justify a need to defer to another sovereign's proceedings ensures protection of the public's and the defendant's interest in a speedy trial. To do otherwise results in the Catch-22 we have here: the state refused to release Mr. Seltzer on bond because of the pending federal proceedings; at the same time, the federal prosecutors refused to prosecute him while the state proceedings were ongoing. All the while, Mr. Seltzer sat in jail. Thus, while the existence of an ongoing state proceeding may justify a delay in federal prosecution, the government must demonstrate that such deference was necessary in the defendant's case.

Importantly, as the Court stated in *Barker*, "the ultimate responsibility" for justifying the delay belongs to the government. 407 U.S. at 531. Unlike in *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009), where the defendant requested seven of the nine continuances granted by the district court, none of the delay here can be attributed to Mr. Seltzer's actions or legal tactics. Although there is no evidence that the government intentionally delayed the case for the explicit purpose of gaining some advantage, the government still bears the burden of bringing a case to trial in a timely fashion, absent sufficient justification. No such justification is present here.

　　　　3.　　Mr. Seltzer's assertion of his desire for a speedy trial

The court next looks to whether the defendant asserted his right to a speedy trial. Such an assertion, if present, is given strong weight in deciding whether there has been a speedy trial violation. *See Batie*, 433 F.3d at 1291 ("Perhaps most important is whether the defendant has actively asserted his right to a speedy trial."); *see also Barker*, 407 U.S. at 531–32 ("The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.").

Here, Mr. Seltzer, even without the benefits of counsel, twice asserted his speedy trial rights. In both his April 26, 2007 pro se motion for bond status, and in his June 12, 2007 pro se motion for appointment of counsel, Mr. Seltzer

requested a speedy trial.  Mr. Seltzer brought prompt and repeated requests which put both the district court and the government on notice that the defendant wished to proceed to a prompt resolution of his case.  *United States v. Latimer*, 511 F.2d 498, 501 (10th Cir. 1975) ("We may weigh the frequency and force of the objections.").  Thus, this factor weighs strongly in favor of Mr. Seltzer.

### 4.    Prejudice to Mr. Seltzer

"The individual claiming the Sixth Amendment violation has the burden of showing prejudice."  *Toombs*, 574 F.3d at 1275.  We assess prejudice in light of the interests that the speedy trial right was designed to protect.  The courts have identified three main interests:  (i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) minimization of the possibility that the defense will be impaired.  *Id.* (citing *Barker*, 407 U.S. at 532).  Of these interests, the most serious is the "hindrance of the defense" because the inability of a defendant to adequately prepare his case skews the fairness of the entire system.  *Id.*[3] "Because the seriousness of a post-accusation delay worsens when the wait is accompanied by pretrial incarceration, oppressive pretrial incarceration is the second most important factor."  *Jackson*, 390 F.3d at 1264.

---

[3]  In some cases of extreme delay, the defendant need not show specific evidence of prejudice.  *Jackson*, 390 F.3d at 1263.  Generally, the court requires a delay of six years before allowing the delay itself to constitute prejudice.  *Id.* (citing *Doggett*, 505 U.S. at 655).

-18-

Here, Mr. Seltzer was prejudiced in at least three ways.[4] First, the delay added to his pretrial incarceration. By not bringing him into court, Mr. Seltzer was denied the right to a bond hearing in state court and kept incarcerated longer than might otherwise be necessary. As the district court stated: "the evidence presented at trial established that [Mr. Seltzer], together with Amy Ottinger, expended considerable effort gathering security to post bond in the state case, but was prevented from doing so because of a federal detainer. Had [Mr. Seltzer] been brought to federal court, he would have been entitled to a detention hearing—and an attorney—on the federal charges." Aplt's App. vol. I, at 0321. Thus, by maintaining a federal detainer, rather than holding a detention hearing, the government assured that Mr. Seltzer would remain in jail until the federal prosecution commenced. *Id.* This type of prolonged pretrial incarceration is a well-established type of prejudice that a defendant may rely upon in making a Sixth Amendment speedy trial claim.

---

[4] The district court rested its finding of prejudice on the fact that the government strengthened its case during the delay. Aplt's App. Vol. I., at 0318 ("Ample evidence was presented at the hearing to show that in the eighteen-month period in which the Government purposefully refused to bring [Mr. Seltzer] to court, the Government gathered evidence to strengthen its case."). We disagree with the district court that this counts as a form of prejudice. There is no evidence that the government delayed for the *purpose* of improving the case. More fundamentally, although the "impairment to defense" prejudicial analysis is concerned that the defense will be hurt by the delay, new evidence of guilt is not what this analysis had in mind. *See United States v. Trauber*, 238 F.3d 79, 91 (1st Cir. 2001) ("[The defendant] does not point to a single authority to support the novel proposition that the potential strength the government's case may acquire over time amounts to prejudice against the defendant.").

Significantly, Mr. Seltzer suffered an impairment of his ability to defend and prepare his case. As noted by the district court, Mr. Seltzer was denied his right to counsel. Further, during the time he was denied his right to counsel, the government appeared ex parte before the magistrate judge. Although the government indicted Mr. Seltzer in November 2006, the government did not arrest him nor did it bring him before the court, and Mr. Seltzer went over six months before the court appointed counsel (at Mr. Seltzer's request). *Id.* at 0053 (Order, filed June 22, 2007).

Third, Mr. Seltzer was prejudiced by the delay in his initial appearance, as the delay deprived him of a chance to invoke his statutory rights under the Speedy Trial Act at an earlier date. *See* 18 U.S.C. § 3161(c)(1). The Speedy Trial Act "requires that a defendant be tried within seventy days from the filing date of the indictment or from the date on which defendant appears before a judicial officer, whichever date is later." *United States v. Gonzales*, 137 F.3d 1431, 1432 (10th Cir. 1998) (holding the defendant's Speedy Trial Act rights were violated). The government did not promptly bring Mr. Seltzer before a judicial officer after the return of the initial indictment, although they did following the grand jury's return of the Superseding Indictment. Had the government brought Mr. Seltzer before a judicial officer in timely manner, he would have been afforded the protections of the statutory speedy trial clock at a

much early point. Underscoring the prejudice to Mr. Seltzer is the markedly different situation of his co-defendant, Mr. Ortego, who appeared before a judicial officer regarding the initial indictment on November 7, 2006.

5.      Balancing

"Speedy trial claims require applying a balancing test." *Jackson*, 390 F.3d at 1266. "[T]he right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial." *Dickey v. Florida*, 398 U.S. 30, 38 (1970). None of these four factors is, "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Batie*, 433 F.3d at 1290 (quoting *Barker*, 407 U.S. at 533).

The balance is decidedly one-sided here: our consideration of the factors to determine whether that fundamental right has been denied all point in one direction. First, the delay suffered by Mr. Seltzer is sufficiently lengthy so as to trigger the *Barker* analysis. Considering the relative simplicity of this particular case, the delay is unreasonable. Second, the government's asserted reason for the delay was not sufficient in this particular case to excuse it. The government has the obligation to bring the defendant to trial in a timely manner and, absent an acceptable justification, this factor weighs in favor of the defendant. Third, Mr. Seltzer twice asserted his right to a speedy trial, a factor weighing heavily in his favor. Fourth, and finally, Mr. Seltzer suffered prejudice as a result of the delay

in a number of ways.  Accordingly, we hold the Mr. Seltzer's Sixth Amendment right to a speedy trial has been violated.

### III.  CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal with prejudice of the Superseding Indictment.