FILED
United States Court of Appeals
Tenth Circuit

April 23, 2025

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

KYLE EDWIN FREEMAN,

     Defendant - Appellant.

No. 24-5019
(D.C. No. CR-20-00142-JFH-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.
_____

This case concerns challenges to a conviction. The defendant,

Mr. Kyle Freeman, urges

- ineffective assistance of counsel,

- denial of a speedy trial,

- lack of a representative venire, and

- insufficient evidence of guilt.

We reject these arguments.

---

[*]    This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

**1.    Mr. Freeman is convicted of first-degree murder.**

After a day of drinking, Mr. Freeman and his girlfriend fought in a park and continued fighting during a later visit to Mr. Donald Thomas. Mr. Thomas tried to calm the situation, but Mr. Freeman killed Mr. Thomas by beating him with an iron bar. The killing resulted in a conviction of first-degree murder after a jury trial.

**2.    We dismiss Mr. Freeman's claim of ineffective assistance of counsel.**

Mr. Freeman raises two claims of ineffective assistance, alleging that his trial lawyers

- argued self-defense when Mr. Freeman wanted to assert innocence and

- improperly told the jury that Mr. Freeman had voluntarily talked to police.

But we don't generally consider claims of ineffective assistance when they are raised on direct appeal because the record is ordinarily inadequate. *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). This case provides a typical example in two respects.

First, Mr. Freeman argues that his attorney should have urged innocence rather than self-defense. But Mr. Freeman does not point to

anything in the record to show that he had asked his attorney to assert innocence rather than self-defense.[1]

Given the lack of support in the record, Mr. Freeman argues that the district court should have conducted an evidentiary hearing because the attorney's tactic had created a "structural error." Appellant's Opening Br. at 10. But Mr. Freeman didn't ask the district court to conduct an evidentiary hearing.

Second, Mr. Freeman argues that his trial counsel improperly stated to the jury that Mr. Freeman had voluntarily spoken with police. According to Mr. Freeman, this statement prevented him from seeking exclusion of what he had told the police. The record is inadequate to resolve this argument because

- the government didn't ask the district court to introduce Mr. Freeman's statement to the police and

- the record doesn't show why defense counsel told the jury that Mr. Freeman had voluntarily talked to the police.

Given the inadequate record, we order dismissal without prejudice of Mr. Freeman's claim of ineffective assistance. *See United States v. Trestyn*, 646 F.3d 732, 744 (10th Cir. 2011) (ordering dismissal without prejudice

---

[1]    Mr. Freeman also claims that this tactic prevented him from testifying, characterizing his inability to testify as a violation of the Fifth and Sixth Amendments. We treat this claim as one for ineffective assistance of counsel. *Cannon v. Mullin*, 383 F.3d 1152, 1170 (10th Cir. 2004), *abrogated in part on other grounds by Cullen v. Pinholster*, 563 U.S. 170 (2011).

3

of a claim of ineffective assistance of counsel that is presented on direct appeal).

### 3.     The pretrial delay doesn't support relief.

The trial was delayed for over two years. On appeal, Mr. Freeman raises claims under the Speedy Trial Act and the Sixth Amendment's Speedy Trial Clause.

#### a.     Speedy Trial Act

To preserve a claim under the Speedy Trial Act, the defendant must object to the delay. 18 U.S.C. § 3162(a)(2). Failure to make such an objection constitutes a waiver of the claim. *United States v. Keith*, 61 F.4th 839, 846–47 (10th Cir. 2023).

In his opening brief, Mr. Freeman asserts that his counsel objected before the trial. But Mr. Freeman gives no citation for this objection, and he didn't make a pretrial motion based on the Speedy Trial Act. Without a citation or apparent support for the alleged objection, Mr. Freeman waived his argument under the Speedy Trial Act.

#### b.     Sixth Amendment

Mr. Freeman also invokes the Sixth Amendment, which guarantees all criminal defendants "the right to a speedy and public trial." U.S. Const., amend. VI. Mr. Freeman didn't invoke this amendment when the proceedings were in district court. So we address this claim under the

plain-error standard. *United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995).

Under this standard, the threshold question is whether the pretrial delay violated the Sixth Amendment. *United States v. Burbage*, 365 F.3d 1174, 1180 (10th Cir. 2004). To answer, we consider

- how long the delay was,

- what the reason was for the delay,

- whether the defendant had asserted the right to a speedy trial, and

- whether the defendant had suffered prejudice from the delay.

*United States v. Medina*, 918 F.3d 774, 780 (10th Cir. 2019). No single factor is dispositive. *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010).

### i.     Length of Delay

The delay was roughly 27 months, which is ordinarily unreasonable. *Seltzer*, 595 F.3d at 1176. But the delay isn't necessarily unreasonable when it results from the case's complexity. *Id.*

Mr. Freeman acknowledged the complexity, relying on it to seek extra time. Given the acknowledged complexity of the case, the length of the delay isn't per se unreasonable.

### ii.    Reasons Given for the Delays

We consider not only the length of the delay and the complexity of the case, but also the reasons given for the continuances. *United States v. Black*, 830 F.3d 1099, 1113 (10th Cir. 2016). These reasons included the need for defense counsel to prepare, the impact of a pandemic, the need for the district court to rule on a motion, and the need for newly appointed attorneys to prepare after a substitution of counsel.

### (a)    Initial Preparation

Mr. Freeman sought the first two continuances—totaling 240 days—so that his counsel could prepare for trial. Because Mr. Freeman requested these continuances, they "do not weigh in favor of a Sixth Amendment violation." *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009).

### (b)    Delay from a Pandemic

The trial was supposed to begin during the COVID-19 pandemic. Given the health concerns from the pandemic, the district court continued the trial 35 days. *See* N.D. Okla. Gen. Order 21-16.[2] This reason for the delay was neutral. *See United States v. Keith*, 61 F.4th 839, 853 (10th Cir. 2023) (stating that "COVID-19 [w]as a truly neutral justification" for purposes of the Sixth Amendment right to a speedy trial).

---

[2]    We take judicial notice of this general order. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (noting that we may take judicial notice of "publicly-filed records . . . in certain other courts concerning matters that bear directly" upon a case).

### (c)     Delay to Consider a Motion

The district court continued the trial 21 days in order to consider a motion. Because the court initiated the continuance to consider a motion, the 21-day delay cuts against the government. *United States v. Muhtorov*, 20 F.4th 558, 640 (10th Cir. 2021).

### (d)     Delay to Prepare New Trial Counsel

Mr. Freeman sought the other continuances, totaling about 520 days, to allow his new counsel to prepare for trial. This reason for the delay doesn't support a constitutional violation. *United States v. Toombs*, 574 F.3d at 1262, 1274 (10th Cir. 2009).

But Mr. Freeman faults the government for these continuances. Early in the pretrial process, the government perceived that Mr. Freeman's counsel had a potential conflict. This perception obligated the government to tell the district court about the potential conflict. *See United States v. Migliaccio*, 34 F.3d 1517, 1528 (10th Cir. 1994) ("[W]hen the government is aware of a conflict of interest, it has a duty to bring it to the court's attention."). The government fulfilled this obligation, and the district court confirmed the conflict and dismissed Mr. Freeman's counsel. The new counsel needed time to prepare, and that delay stemmed from defense counsel's conflict rather than anything the government had done.

* * *

For the continuances, the only support for a constitutional claim consists of the 21 days that the district court took to consider a motion. That delay isn't enough to suggest a constitutional violation.

### iii. Assertion of the Right to a Speedy Trial

We also consider "whether the defendant's behavior during the course of litigation evinces a desire to go to trial." *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006). For this inquiry, we conclude that Mr. Freeman's repeated continuances do not suggest a desire to expedite the trial. This factor thus weighs against a constitutional violation.

### iv. Prejudice

If the delay attributable to the government is less than six years, the defendant must "make a particularized showing of prejudice." *United States v. Landa-Arevalo*, 104 F.4th 1246, 1257 (10th Cir. 2024) (internal quotation marks omitted). The delay here was less than three years, and Mr. Freeman doesn't argue that he suffered particularized prejudice from the delay. This factor thus weighs against a constitutional violation. *See United States v. Margheim*, 770 F.3d 1312, 1329 (10th Cir. 2014) ("[I]n most circumstances, failure to specify prejudice will eviscerate the defendant's claim.").

\* \* \*

All the factors weigh against a constitutional violation, so the district court didn't plainly err in rejecting this claim.

**4.    Mr. Freeman failed to support his challenge to the venire.**

Mr. Freeman also claims that the jury pool systematically underrepresented Native Americans. But Mr. Freeman didn't make this claim when the proceedings were in district court. So we apply the plain-error standard. *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). Under this standard, a threshold question is whether an error existed. *See United States v. Benally*, 19 F.4th 1250, 1256 (10th Cir. 2021).

To establish an error, Mr. Freeman must identify the percentage of Native Americans in the community. *United States v. Contreras*, 108 F.3d 1255, 1268–69 (10th Cir. 1997).[3] But the record contains no evidence about the number or percentage of Native Americans in the district.

Mr. Freeman points out that the record doesn't show whether anyone asked the venirepersons whether they were Native American. But that questioning wouldn't matter unless the court knew the percentage of Native Americans in the community. *See Duren v. Missouri*, 439 U.S. 357, 364 (1979) ("[T]he defendant must demonstrate the percentage of the community made up of the group alleged to be underrepresented, for this is the conceptual benchmark for the Sixth Amendment fair-cross-section requirement."). Without that information, Mr. Freeman can't show

---

[3]    Mr. Freeman concedes that for a "prima facie violation," he needed to show "that the representation of [a distinctive group] in jury venires is not fair and reasonable in relation to the number of such persons in the community." Appellant's Opening Br. at 23–24.

underrepresentation of Native Americans. *See United States v. Williams*, 264 F.3d 561, 568–69 (5th Cir. 2001) (stating that the composition of the venire was irrelevant in the absence of information about the group's percentage in the community). And without a showing of underrepresentation of Native Americans in the community, the district court was right to reject Mr. Freeman's claim. *See United States v. Contreras*, 108 F.3d 1255, 1268 (10th Cir. 1997) (rejecting a similar claim based on the absence of evidence concerning the racial composition of the district).

**5.    The evidence of guilt is sufficient.**

Finally, Mr. Freeman argues that the government failed to present sufficient evidence of first-degree murder. For this argument, we conduct de novo review, viewing the evidence in the light most favorable to the government to determine whether a rational jury could have found guilt beyond a reasonable doubt. *United States v. Serrato*, 742 F.3d 461, 472 (10th Cir. 2014).

To convict Mr. Freeman of first-degree murder under 18 U.S.C. § 1111(a), the government needed to prove that he had acted with malice aforethought and premeditation. Mr. Freeman asserts that

- he showed that he had been intoxicated and

- his intoxication prevented any reasonable jury from finding malice aforethought or premeditation.

We disagree with these assertions.

A killing is with *malice aforethought* when the defendant acted

- deliberately and intentionally or

- callously with wanton disregard of human life.

*United States v. Smith*, No. 23-7087, slip op. at 14 (10th Cir. Apr. 22, 2025) (to be published). A killing is *premeditated* when the defendant committed a homicide after forming an intent to kill. *See United States v. Nichols*, 169 F.3d 1255, 1276 (10th Cir. 1999) ("The requirement of premeditation under section 1111(a) involves a prior design to commit murder.").

Mr. Freeman did present evidence of intoxication, which can negate premeditation and malice aforethought. *Malone v. Carpenter*, 911 F.3d 1022, 1031 (10th Cir. 2018); *United States v. Sands*, 968 F.2d 1058, 1064 (10th Cir. 1992). But two eyewitnesses testified that Mr. Freeman

- had appeared sober enough to understand what he was doing (testimony by Savanna Pearce and William Thomas) and

- had said that he killed Mr. Thomas for acting with disrespect (testimony by Savanna Pearce and Shenoa Freeman).

From that testimony, a reasonable jury could find first-degree murder.[4] *See United States v. Magleby*, 241 F.3d 1306, 1312 (10th Cir. 2001) ("Where

---

[4]     A few hours after the killing, Mr. Freeman was arrested; and the arrest was videotaped. The government argues that the video shows Mr. Freeman walking backward, kneeling, and talking coherently. For the

conflicting evidence exists, we do not question the jury's conclusions regarding the credibility of witnesses or the relative weight of evidence.").

We affirm the conviction of first-degree murder and order dismissal without prejudice of the claim of ineffective assistance of counsel.

Entered for the Court


Robert E. Bacharach
Circuit Judge

---

sake of argument, we may assume that Mr. Freeman had become sober in the intervening hours.