**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 27, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

KEON ANTHONY NIXON, a/k/a
Young Taz,

      Defendant - Appellant.

No. 18-1154

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CR-00193-WYD-1)**
_____

R. Scott Reich, The Reich Law Firm, LLC, Denver, Colorado for the
Defendant-Appellant.

Paul Farley, Assistant United States Attorney (Robert C. Troyer, United
States Attorney, with him on the brief), Office of the United States
Attorney, Denver, Colorado for the Plaintiff-Appellee.
_____

Before **BACHARACH**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

     This appeal grew out of dual prosecutions of Mr. Keon Nixon. In

state court, he was charged with first-degree murder, first-degree assault,

and use of a weapon during the commission of a violent crime. After these charges were filed, federal authorities indicted Mr. Nixon for possessing a firearm after a felony conviction. *See* 18 U.S.C. § 922(g)(1). But federal authorities then waited almost a year to arraign Mr. Nixon.

After Mr. Nixon was eventually arraigned, he moved to dismiss the federal indictment, contending that the delay in the federal case violated his Sixth Amendment right to a speedy trial. The district court denied the motion, concluding that

- federal authorities had a valid reason for the delay,

- Mr. Nixon had waited too long to invoke his right to a speedy trial after learning of the federal charge, and

- the delay had not created prejudice.

We agree with these conclusions and affirm the denial of Mr. Nixon's motion to dismiss.

## I. The state and federal charges against Mr. Nixon take two separate tracks.

Before charging Mr. Nixon with murder, state authorities had also brought multiple counts of possessing a firearm after a felony conviction in violation of state law. Months later, the factual allegations underlying these charges led federal authorities to indict Mr. Nixon for possessing a firearm after a felony conviction in violation of federal law. Given the federal indictment, state authorities moved to dismiss their gun charges,

2

telling the state court and Mr. Nixon that he was "being federally charged."

By that time, state authorities had begun the murder case against Mr. Nixon. In light of that case, federal authorities decided to postpone their prosecution. After the federal indictment was pending almost a year, however, federal authorities decided that they couldn't wait any longer. So they brought Mr. Nixon to federal court for an arraignment.

A few weeks later, Mr. Nixon moved to dismiss the indictment based on a denial of his Sixth Amendment right to a speedy trial. While this motion was pending, the state murder case went to trial and Mr. Nixon was acquitted. Shortly thereafter, the district court denied Mr. Nixon's motion to dismiss.

## II.   We conclude that the delay didn't violate the Sixth Amendment.

We reject Mr. Nixon's speedy-trial claim.

### A.   Standard of Review

The sole issue is whether the federal delay violated the Sixth Amendment. The district court concluded that the delay hadn't violated the Sixth Amendment, and we engage in de novo review of that legal conclusion. *United States v. Dirden*, 38 F.3d 1131, 1135 (10th Cir. 1994). For factual findings underlying this legal conclusion, however, we apply

3

the clear-error standard of review. *United States v. Black*, 830 F.3d 1099, 1111 (10th Cir. 2016).

**B.     Application of the Constitutional Test for a Speedy Trial**

We apply these standards of review to the constitutional test for a speedy trial.

**1.     Length of the Delay as a Trigger for Further Scrutiny**

Under this test, the threshold inquiry is whether the federal delay was long enough to create a presumption of prejudice. *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006). Prejudice is generally presumed when the delay approaches one year. *Id.* A presumption of prejudice is required to trigger further examination of a defendant's Sixth Amendment claim. *Id.*

The delay period starts with the indictment or arrest, whichever comes first. *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004). Here the indictment came first. With the indictment as the starting point, some courts end the delay period with the trial or denial of the motion to dismiss. *E.g.*, *United States v. Villarreal*, 613 F.3d 1344, 1350 (11th Cir.

2010). But here no federal trial took place,[1] so we treat the ruling on the motion to dismiss as the end of the delay period.

This delay period consisted of approximately fifteen months. Because this period exceeded one year, it created a presumption of prejudice, triggering further scrutiny. *See United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010) (holding that the length of the delay was presumptively prejudicial because it exceeded one year).

### 2. The Four Applicable Factors

When engaging in further scrutiny, we consider four factors:

1. the length of the delay

2. the reason that the government gave for the delay

3. the defendant's assertion of a speedy-trial right

4. the prejudice to the defendant

*Barker v. Wingo*, 407 U.S. 514, 530 (1972). We have not yet decided the appropriate standard to review the district court's rulings on these factors. *United States v. Medina*, No. 17-1455, slip op. at 22, ___ F.3d ___ (10th Cir. Mar. 12, 2019) (to be published). And we need not do so here because even

---

[1] Mr. Nixon contends that the delay period should end with the date of the trial setting. But the district court vacated the trial date when ruling on Mr. Nixon's motion to dismiss, so there was no trial setting at the time of the ruling. We thus calculate the delay period as roughly fifteen months, which is slightly longer than Mr. Nixon's calculation. *See* Appellant's Reply Br. at 1 ("[T]he relevant period of delay is the gap between the filing of the indictment and the jury trial setting, which in this case was approximately fourteen months.").

5

under de novo review of the rulings on each factor, we would affirm because the second, third, and fourth factors would support the government. *See id.* (declining to decide the standard of review for the rulings on the four factors because we could "decide this appeal under de novo review").

### a. Length of the Delay

As noted above, the delay of roughly fifteen months was long enough to create a presumption of prejudice. *See* p. 5, above. But we must decide how much weight to assign this delay, considering the length of time and the complexity of the federal case. *See Doggett v. United States*, 505 U.S. 647, 652 (1992) (considering the length of the delay); *United States v. Seltzer*, 595 F.3d 1170, 1176–77 (10th Cir. 2010) (considering the complexity of the federal case).

The length of the delay, roughly fifteen months, is considerable. But we must also consider the extent to which the delay "exceeds the bare minimum for judicial examination of the claim." *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004) (internal quotation marks omitted). The "bare minimum for judicial examination" would consist of the period of roughly twelve months. *Id.* The extra delay consisted of only about three months.

But we must also gauge the delay based on the simplicity or complexity of the federal charge. The government conceded in district court that the felon-in-possession charge was not complex, and we agree.

6

*See Seltzer*, 595 F.3d at 1176 (characterizing felon-in-possession charges as uncomplicated, which magnified the impact of a two-year delay). Given the uncomplicated nature of the felon-in-possession charge, the first factor supports Mr. Nixon. *See United States v. Batie*, 433 F.3d 1287, 1290–91 (10th Cir. 2006) (concluding that a 17 ½-month delay supported the defendant based on the simplicity of the federal charge).

### b.     Reason for the Delay

We also consider the reason for the delay. Here federal authorities waited because of the pending state charges. With dual prosecutions, federal authorities wanted to avoid logistical burdens from simultaneous proceedings in state and federal courts. Otherwise, authorities might have needed to continually shuttle Mr. Nixon between state and federal custody.

*Avoiding competing custodial needs*. When federal authorities indicted Mr. Nixon, he was in state custody. To begin their prosecution, federal authorities needed to either put Mr. Nixon in federal custody or shuttle him back and forth between state and federal custody through multiple writs of habeas corpus ad prosequendum.

Both options posed difficulties. Taking federal custody of Mr. Nixon would require state authorities to execute a writ whenever Mr. Nixon was needed for a state-court proceeding. And if federal authorities left Mr. Nixon in state custody, federal authorities would need to execute a writ whenever they needed Mr. Nixon in federal court. To avoid ping-ponging

7

Mr. Nixon between state and federal custody, federal authorities decided to wait on the state-court proceedings. This approach was permissible. *See United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998) ("Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay."); *see also United States v. Watford*, 468 F.3d 891, 896, 903 (6th Cir. 2006) (holding that federal authorities' decision to wait on state murder proceedings constituted a valid reason to delay prosecution on federal drug and gun charges).[2]

Mr. Nixon questions the genuineness of this reason, pointing out that federal authorities ultimately arraigned him before the start of the state

---

[2]    At oral argument, defense counsel acknowledged that the federal arraignment could create potential problems for state charging authorities:

> Court: . . . and so, and so what the federal government did do doesn't prejudice your client any more than had it simply delayed charging?

> Defense Counsel: Well your honor, actually it, it complicates things when one is charged federally. One, they're—if they are brought over to the district court for an arraignment . . . for initial appearance it does complicate things because they're now going to . . . be maintained in federal custody. Once the federal government has an individual, they don't like to give them back to the state. And frankly it was rather unusual in this particular case, the court asked whether, well what did you do, Mr. Reisch? You were representing Mr. Nixon on his state case; did you contact the federal government? No. In my experience, if there's been a state case and the Feds pick it up, they immediately swoop in and get the individual on that writ and they don't give him back until the federal case is over. So even in some point in state cases where speedy trial is ticking.

8

murder trial. But the government has explained that decision: After waiting nearly a year, federal authorities decided that they could no longer afford to continue waiting. They knew that a delay approaching one year would create a presumption of prejudice (as discussed above), risking a speedy-trial violation if the state case continued to linger. So federal authorities stopped waiting and brought Mr. Nixon to federal court for an arraignment. We see little reason to question the genuineness of the government's explanation for the delay.

*Mr. Nixon's incarceration close to the federal courthouse.* Mr. Nixon contends that the burden of shuttling him between federal and state custody would have been softened by his proximity to the federal courthouse. Transportation itself was not the problem, for Mr. Nixon was detained within 1 ½ miles of the federal courthouse. *See United States v. Seltzer*, 595 F.3d 1170, 1178 (10th Cir. 2010) (holding that the burden of transporting the defendant back and forth was not a valid reason for delay when the defendant was being detained only blocks from the federal courthouse). Though he was nearby, federal authorities weren't waiting on the state case to save on mileage or time; they were waiting in order to avoid jurisdictional conflicts over custody.[3] These conflicts weren't affected by Mr. Nixon's incarceration close to the federal courthouse.

---

[3] The district court explained that some of these potential conflicts materialized once federal authorities began their prosecution. For example,

*The district court's characterization of the state murder case as "very active" and "complex."* Mr. Nixon also challenges the district court's description of the state case as "very active" and "complex." We reject these challenges.

To review the district court's characterization of the state case as "very active," we apply the clear-error standard. *See United States v. Banks*, 761 F.3d 1163, 1182 (10th Cir. 2014) (applying the clear-error standard to the district court's characterization of a case as complex). As Mr. Nixon points out, there were only seven actual proceedings in state court during the delay in the federal case. But more proceedings had been scheduled in state court, and federal authorities couldn't have known in advance which state-court proceedings would be continued or cancelled. Given this practical difficulty, we conclude that the district court did not commit clear error in characterizing the state case as "very active."

Mr. Nixon also challenges the district court's characterization of the state case as "complex." We reject this challenge. The overarching question is whether deference to a more complicated state prosecution

a hearing in state court delayed the federal arraignment. For the arraignment, the federal district court issued a writ of habeas corpus ad prosequendum on May 10, 2017. But the state court conducted a hearing on May 26, so the federal district court was not able to conduct the arraignment until June 15, over a month after issuance of the writ.

10

constitutes a legitimate reason to postpone a federal prosecution. In the context of a state murder case, we answered in *United States v. Frias*, stating that federal authorities could postpone a federal prosecution to allow the state murder case to proceed. 893 F.3d 1268, 1272 (10th Cir. 2018).

We might justify this deference based on the inherent complexity of murder cases. *See, e.g.*, *United States v. Steel*, 759 F.2d 706, 709 (9th Cir. 1985) (referring to the "inherent complexity" of murder cases). Or we might justify deference based on comity. *See United States v. Watford*, 468 F.3d 891, 903 (6th Cir. 2006) (stating that the defendant's "insistence that federal authorities . . . could have secured his appearance [earlier] by writ of *habeas corpus ad prosequendum* ignores principles of comity that the Government customarily observes when interacting with a custodial sovereign"). Either way, however, we conclude that deferring to a state murder case could serve legitimate ends. We thus find little reason to fault the district court for relying in part on the complexity of the state murder case. So the reason for the delay supports the government.

### c. Invocation of the Right to a Speedy Trial

In addition to the length of the delay and reasons for it, we consider whether the defendant invoked his right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 531–32 (1972). If he did invoke this right, we consider how long he waited. "[I]n general, the sooner a criminal defendant raises the

11

speedy trial issue, the more weight this factor lends to his claim." *Jackson v. Ray*, 390 F.3d 1254, 1263 (10th Cir. 2004). And even when the defendant fails to invoke the right to a speedy trial, this factor might vary in importance depending on whether the defendant was represented or knew about the federal charge during the delay period. *Barker*, 407 U.S. at 529. Here Mr. Nixon waited almost a year to invoke his right to a speedy trial.

During this period of almost a year, Mr. Nixon had counsel on the state murder charge but not on the federal charge. Despite Mr. Nixon's lack of representation in the federal case, however, he quickly learned about the federal charge: Within two weeks of the federal indictment, state authorities moved to dismiss the state gun charges, explaining that Mr. Nixon was "being Federally charged." R. Vol. I at 69. Based on this explanation, the district court found that Mr. Nixon was on notice of the federal charge. And we must credit that finding because it is not clearly erroneous.[4]

Though Mr. Nixon had notice of the federal charge, he denies obtaining the actual indictment until his arraignment. But the indictment had not been sealed; Mr. Nixon knew that he was being charged and could have obtained the indictment at any time. *Cf. United States v. Frias*, 893

---

[4] Mr. Nixon conceded at oral argument that he had been advised that a federal charge was forthcoming.

F.3d 1268, 1273 (10th Cir. 2018) (concluding that this factor favored the defendant when the government sealed the indictment and did not make the defendant aware of the charges).

The resulting issue is the impact of Mr. Nixon's knowledge of the forthcoming federal charge despite his lack of representation. The Supreme Court addressed the impact of this knowledge in *Doggett v. United States*, 505 U.S. 647 (1992). There the defendant didn't know about the federal charge, so he could not have invoked his right to a speedy trial. *Doggett*, 505 U.S. at 650, 653. But the Supreme Court noted in dicta that if the defendant had known of his indictment during the delay period, his failure to invoke the right to a speedy trial "would be weighed heavily against him." *Id.* at 653. Though this language constitutes dicta, the Supreme Court's dicta is almost as influential to us as its holdings. *United States v. Orona*, 724 F.3d 1297, 1311 (10th Cir. 2013).

Under this dicta, the third factor cuts against Mr. Nixon. Though he was unrepresented in the federal case, he knew within two weeks of his federal indictment that he was being federally charged. Under *Doggett*, this awareness of the federal charge weighs heavily against Mr. Nixon. *See United States v. Tchibassa*, 452 F.3d 918, 926 (D.C. Cir. 2006) (relying on *Doggett* to conclude that the delay in invoking the right to a speedy trial weighed against the defendant because he had known about the indictment during the delay period); *see also United States v. Robinson*, 455 F.3d 602,

13

608 (6th Cir. 2006) (stating that if the government could prove that the defendant had known of the charges and failed to assert his right to a speedy trial, this factor would weigh heavily against him).

Mr. Nixon contends that he needed legal assistance to inform him of his right to a speedy trial. This contention suggests that the Supreme Court's dicta in *Doggett* was erroneous, but we do not second-guess the Supreme Court's dicta. *See Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) ("[T]his court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings . . . ."); *see also* p. 13, above. So the third factor supports the government.[5]

### d. Prejudice

The final factor (prejudice) also supports the government.

*Mr. Nixon's burden and the presumption of prejudice.* Mr. Nixon bore the burden of showing prejudice, and this burden required more than showing a mere possibility of prejudice. *See United States v. Larson*, 627 F.3d 1198, 1208–09 (10th Cir. 2010) (burden of showing prejudice); *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) (possibility of prejudice not enough). A defendant can satisfy this burden based on a presumption of prejudice when the delay is extreme. *See Larson*, 627 F.3d

---

[5] The district court stated that one could reasonably infer that Mr. Nixon had not invoked his right to a speedy trial because he wanted to go to trial first in his state murder case. We need not address the reasonableness of this inference.

at 1209. The benchmark for extreme delay is ordinarily six years. *Id.* Here, though, the delay involved only about fifteen months. *See* p. 5, above. So we cannot presume prejudice from the delay itself.

*Three potential interests bearing on the issue of prejudice*. Rather than presume prejudice, we consider three potential interests underlying the right to a speedy trial:

1. Preventing oppressive incarceration

2. Minimizing the anxiety and concern of the defendant

3. Limiting the possibility that the defense will be impaired

*United States v. Seltzer*, 595 F.3d 1170, 1179 (10th Cir. 2010).

*Oppressive incarceration*. Mr. Nixon was detained in both the state case and the federal case, and all of the detention time in the two cases had to be credited toward the federal sentence. 18 U.S.C. § 3585(b); Federal Bureau of Prisons, Prisons Program Statement, 5880.28, 1-14A (Feb. 14, 1997).[6] Despite getting this credit, Mr. Nixon insists that with an earlier arraignment, he could have started serving his federal sentence earlier and obtained good-time credits more quickly. But Mr. Nixon not only failed to present this argument in district court but also conceded that "oppressive

---

[6]    While the appeal has been pending, the government notified the court that Mr. Nixon has been credited with all of the time spent in pretrial detention for both the state case and the federal case.

15

pretrial incarceration" was not an issue because of his detention in state court.

Mr. Nixon denies that he had an opportunity to present this argument in district court. He points out that (1) the contention remained academic until he obtained an acquittal in the state murder case and (2) the hearing on his motion to dismiss the federal charge (based on the right to a speedy trial) had preceded his acquittal in state court. But Mr. Nixon could have argued in his motion to dismiss that

- if he were to obtain an acquittal in state court, he would go into federal custody and

- the delay in his federal case would cost him an opportunity to earn good-time credits.

Or he could have supplemented his motion to dismiss after obtaining the acquittal.[7]

Because Mr. Nixon failed to present the district court with this theory of prejudice, it is considered forfeited. *Puckett v. United States*, 556 U.S. 129, 134 (2009). Given this forfeiture, we apply the plain-error standard to Mr. Nixon's new theory of prejudice. *United States v. Ahidley*, 486 F.3d 1184, 1188 (10th Cir. 2007).

---

[7]    Mr. Nixon's state murder trial took place three weeks after the hearing on the motion to dismiss. But the district court didn't rule on the motion to dismiss until over three weeks after Mr. Nixon's acquittal in the state case.

Under the plain-error standard, Mr. Nixon must show that a plain error was committed, that the error affected his substantial rights, and that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005). For the sake of argument, we may assume that the district court should have considered the possibility of prejudice from Mr. Nixon's lost opportunity to earn good-time credits. This assumption would support relief only if the error had been obvious. *United States v. Muñoz*, 812 F.3d 809, 813–14 (10th Cir. 2016). In our view, however, any possible error would not have been obvious because

- no precedent exists to support this theory and

- we can only speculate on whether Mr. Nixon would have earned additional good-time credits.

An error can ordinarily be obvious only if the Supreme Court or our court has previously addressed the issue. *United States v. Thornburgh*, 645 F.3d 1197, 1208 (10th Cir. 2011). As Mr. Nixon concedes, neither the Supreme Court nor our court has addressed the possibility of prejudice from the inability to earn good-time credits.

We might assume, for the sake of argument, that an error might be obvious even without an applicable precedent. Here, though, the Supreme Court has suggested that the prejudice must come from oppressive incarceration before the trial (rather than after it):

17

> The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald*, 456 U.S. 1, 8 (1982); *see also United States v. Habhab*, 132 F.3d 410, 417 (8th Cir. 1997) ("While a pre-trial delay may allow necessary witnesses to die, become unavailable, or simply forget important facts, a post-trial delay cannot lead to the same complications.").

Mr. Nixon's new theory of prejudice not only lacks supporting precedent but also rests on speculation. Mr. Nixon could have gained eligibility for good-time credits only by displaying exemplary compliance with the prison's disciplinary regulations. 18 U.S.C. § 3624(b)(1). Even with exemplary compliance, prison officials would enjoy discretion as to whether to award good-time credits. *See United States v. Hedges*, 458 F.2d 188, 190 (10th Cir. 1972) ("Grant . . . of good behavior time is a matter totally within the discretion of penal authorities."); *Smoake v. Willingham*, 359 F.2d 386, 388 (10th Cir. 1966) ("The matter of granting . . . good time of a Federal prisoner is a matter for the determination of the prison authorities, subject to the supervision of the Attorney General of the United States, and the decision of the prison authorities or the Attorney General is conclusive in the absence of a showing of abuse of discretion.").

Given the uncertainties of how Mr. Nixon would behave in the future or how authorities would exercise their discretion in the future, the district court couldn't have known whether an earlier arraignment would have speeded Mr. Nixon's good-time credits. *See Goodrum v. Quarterman*, 547 F.3d 249, 264–65 (5th Cir. 2008) (concluding that eligibility for programs in prison does not create prejudice because prison authorities might not have allowed the defendant to participate). So Mr. Nixon's theory of prejudice rests inherently on speculation. *See United States v. Hilario*, 449 F.3d 500, 501 (2d Cir. 2006) (per curiam) (rejecting the defendant's "speculative assertion that he would have earned good time credit in a [federal] prison had he served his time in such a facility"); *see also Ortega v. Williams*, 1999 WL 71715, at *4 (10th Cir. 1999) (unpublished) (rejecting a due-process claim based on a lost opportunity to earn good-time credits because this possibility rested on speculation).

In similar circumstances, we've rejected a theory of prejudice based on speculation that a defendant could have earned good-time credits if he'd been housed in a state prison rather than a county jail. *Perez v. Sullivan*, 793 F.2d 249, 256–57 (10th Cir. 1986).[8] The same speculation arises here,

---

[8] Mr. Nixon contends that *Perez* is distinguishable because there we were addressing a delay between a guilty plea and sentencing. Given the guilty plea, the defendant's liberty interest was diminished. *Perez*, 793 F.2d at 256. But the strength of the liberty interest matters only because of the heightened need to show prejudice. *Id.* And in *Perez*, the court confronted a theory of prejudice stemming from the lost opportunity to

19

for we can't possibly know whether prison authorities would have awarded more good-time credits to Mr. Nixon if he'd started serving his federal sentence earlier. We thus conclude that the district court did not commit an obvious error by failing to consider the possibility of additional good-time credits, so this theory of prejudice fails under the plain-error standard.[9]

*Anxiety and concern*. Mr. Nixon also urges prejudice based on anxiety and concern from the delay. But this argument consists of only a single clause in his opening brief: "This Defendant has been deprived of his right to counsel for over a year for no valid reason, impairing the defense and *imposing unnecessary anxiety and concern on the part of this Defendant*." Appellant's Opening Br. at 28–29 (emphasis added). This single clause does not suffice for prejudice. *See United States v. Larson*,

---

obtain good-time credits. *Id*. We rejected this theory of prejudice because the extent of the defendant's ultimate benefit had been "entirely speculative." *Id*. at 257.

[9]   This theory of prejudice assumes that if federal authorities had accelerated their prosecution, Mr. Nixon would have started serving his federal sentence earlier. This assumption is itself speculative. Once Mr. Nixon was arraigned on the federal charge, the federal court had the discretion to

- release him and lodge a detainer in the event that he was released from state custody or

- detain him.

If the federal court had released Mr. Nixon with a detainer, he may have returned to state custody even after his federal sentencing.

627 F.3d 1198, 1211 (10th Cir. 2010) ("[G]eneralized and conclusory references to the anxiety and distress that purportedly are intrinsic to incarceration are not sufficient to demonstrate particularized prejudice . . . .").

*Impairment of the defense.* Finally, Mr. Nixon contends that his defense was impaired. For impairment of a defense, we ordinarily consider the loss of particular pieces of evidence. *United States v. Hicks*, 779 F.3d 1163, 1169 (10th Cir. 2015). But Mr. Nixon doesn't suggest a loss of evidence.[10] He instead alleges the inability to (1) obtain legal representation and (2) assert a viable claim under the Speedy Trial Act. Both theories are invalid under *United States v. Frias*, 893 F.3d 1268 (10th Cir. 2018).

We've twice considered a defendant's claim of prejudice based on the inability to obtain legal representation during the delay period: once in *United States v. Seltzer*, 595 F.3d 1170 (10th Cir. 2010), and again in *United States v. Frias*, 893 F.3d 1268 (10th Cir. 2018). In *Seltzer*, we found prejudice in the lost opportunity for legal representation. *Seltzer*, 595 F.3d at 1180. But in *Frias*, we held the opposite. *Frias*, 893 F.3d at 1274. We explained the different outcomes based on the difference in

---

[10] At oral argument, Mr. Nixon suggested for the first time that the delay had prevented him from learning about DNA evidence. But Mr. Nixon waived this argument by failing to present it in his appeal briefs. *United States v. Brown*, 164 F.3d 518, 521 n.3 (10th Cir. 1998).

facts. *Frias*, 893 F.3d at 1274 & n.3. In *Seltzer*, the lack of counsel hampered the defense because prosecutors took action during the delay period to undermine the defense, appearing ex parte before the judge and giving the defendant's accomplice an opportunity to cooperate with the prosecution. *Seltzer*, 595 F.3d at 1180. Without these events hampering the defense, we explained in *Frias*, the inability to obtain counsel during the delay period didn't constitute prejudice. *Frias*, 893 F.3d at 1274 & n.3.

Here Mr. Nixon does not point to anything that happened during the delay period to hamper his defense. Instead, he argues only that he lacked an attorney between his federal indictment and arraignment. We have no indication of (1) any steps taken by the government to continue investigating Mr. Nixon during this delay period or (2) a lost opportunity for Mr. Nixon's defense.

Mr. Nixon appeared to concede this reality in oral argument. There he was asked what the government should have done differently. He answered that the government should have postponed its request for an indictment.[11] If the government had pursued this suggested course,

---

[11]   This was the exchange:

Court: So what should the government have done . . . the federal government, that you would then say they did not violate the Sixth Amendment?

Defense Counsel: Well your honor, I think what the government should have done was look at the case . . . and the dates in the

22

however, Mr. Nixon would have remained without counsel during the delay period. Given *Frias*, the lack of counsel—in itself—does not constitute prejudice.

But Mr. Nixon also alleges that if he had been arraigned earlier, he would have had a viable argument for dismissal under the Speedy Trial Act.[12] We again addressed this argument in both *Seltzer* and *Frias*. In *Seltzer*, we recognized that the lost opportunity to invoke the Speedy Trial Act could constitute prejudice. *Seltzer*, 595 F.3d at 1180–81. But in *Frias*,

---

statute of limitations. There is a 5-year statute of limitations in this particular case. If they were worried about interfering with the state case or something along those lines which I mean, they say they . . . that was their concern, but it wasn't because they did interfere by bringing . . . writting him back to the federal courts or bringing to the federal courts. They could have simply waited. They could have waited and then gone seek an indictment once the state court case was over.

Court: So charging . . . that's one way they could have delayed their charge?

Defense Counsel: Yes, your honor.

Mr. Nixon also said in his opening brief that the government could have avoided simultaneous prosecutions by waiting to obtain an indictment until the state case was over.

[12] At oral argument, the government contended that Mr. Nixon's time spent in state custody would be excludable under the Speedy Trial Act. *Cf. United States v. Occhipinti*, 998 F.2d 791, 796 n. 4 (10th Cir. 1993) ("Time spent in state custody on related state charges does not trigger the Speedy Trial Act's clock."). But Mr. Nixon contends that if his federal arraignment had taken place earlier, he would have gone into federal custody earlier. We thus decline to consider whether Mr. Nixon's time in state custody would have been excludable under the Speedy Trial Act.

we found no prejudice from a lost opportunity to invoke the Speedy Trial Act. *Frias*, 893 F.3d at 1274.

Here too we reconciled the different outcomes based on the difference in facts, explaining that the lost opportunity to invoke the Speedy Trial Act constituted prejudice in *Seltzer* only because the defendant had shown other lost opportunities for his defense during the delay period. *Id.* Without a showing of other lost opportunities, we explained in *Frias*, the inability to invoke the Speedy Trial Act had not constituted prejudice for a Sixth Amendment claim. *Id.*; *see also United States v. Medina*, No. 17-1455, slip op. at 31 (10th Cir. Mar. 12, 2019) (to be published) (distinguishing *Seltzer* and concluding that the inability to invoke the Speedy Trial Act was not prejudicial when the defendant "'has shown no lost opportunities from delay'" (quoting *United States v. Frias*, 893 F.3d 1268, 1274 (10th Cir. 2018))).

Mr. Nixon has not shown any lost opportunities for his defense during the delay period. Like the defendant in *Frias*, Mr. Nixon argues only that he would have had a viable legal argument under the Speedy Trial Act if he had been arraigned earlier. In *Frias*, we held that this argument didn't support prejudice. That holding governs here, requiring us to reject Mr. Nixon's theory of prejudice based on his inability to invoke the Speedy Trial Act. *See Medina*, No. 17-1455, at 31–32 (holding that the inability to invoke the Speedy Trial Act did not constitute prejudice in the

24

absence of additional proof of oppressive pretrial incarceration, anxiety of concern, or impairment of the defense).

* * *

When considering whether a delay violates a defendant's Sixth Amendment right to a speedy trial, we balance four factors. *Jackson v. Ray*, 390 F.3d 1254, 1266 (10th Cir. 2004). No single factor is a "necessary or sufficient condition to the finding of the deprivation of the right of speedy trial." *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006). But the lack of prejudice is "nearly fatal" to a claim. *United States v. Gould*, 672 F.3d 930, 939 (10th Cir. 2012); *see United States v. Margheim*, 770 F.3d 1312, 1329 (10th Cir. 2014) ("[I]n most circumstances, failure to specify prejudice will eviscerate the defendant's [speedy-trial] claim."); *see also United States v. Frias*, 893 F.3d 1268 (10th Cir. 2018) (rejecting a Sixth Amendment speedy-trial claim when prejudice was absent even though all of the other factors had supported the defendant).

The first factor, the length of the delay, supports Mr. Nixon. But the other three factors support the government. Given this weighing of the factors, we conclude that the delay did not violate Mr. Nixon's right to a speedy trial under the Sixth Amendment. We thus affirm the denial of Mr. Nixon's motion to dismiss.