FILED
United States Court of Appeals
Tenth Circuit

April 4, 2025

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LUIS GUTIERREZ,

    Defendant - Appellant.

No. 23-2076

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:20-CR-01570-JCH-1)**
_____

Margaret Ann Katze, Federal Public Defender, Albuquerque, New Mexico (Violet N. D. Edelman, Assistant Federal Public Defender, Albuquerque, New Mexico, on the briefs), for Defendant-Appellant.

Tiffany L. Walters, Assistant United States Attorney (Alexander M.M. Uballez, United States Attorney, with her on the brief), District of New Mexico, Albuquerque, New Mexico, for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

**TYMKOVICH**, Circuit Judge.
_____

The Sixth Amendment to the Constitution guarantees "the accused . . . the right to a speedy and public trial." Luis Gutierrez argues the federal government violated that right because it waited about two years after his indictment before

proceeding with his federal case.  The government responds its delay was due to a parallel state prosecution of Gutierrez and obstacles caused by the COVID-19 pandemic.  And regardless, the government contends, Gutierrez suffered no prejudice from the delay.

Gutierrez argues the government's pretrial delay deprived him of an argument he could have made at sentencing, which in turn could have won him a shorter sentence.  But the Speedy Trial clause's text and history show its protections are limited to the preconviction phase of a case and does not apply to alleged harms that occur *after* the defendant is found guilty.  Thus, prejudice suffered at postconviction sentencing, even if it resulted from pretrial delay, is not cognizable under the Sixth Amendment's Speedy Trial clause.

We **AFFIRM**.

# I.    Background

## A.    *Gutierrez is Charged with Both State and Federal Crimes*

Luis Gutierrez was arrested in May 2020, after New Mexico state officers found a loaded, stolen pistol in his motel room.  Officers were looking for Gutierrez after receiving reports that he had fired several rounds outside his estranged wife's home on at least two separate occasions.  He also had threatened to kill her multiple times.

Gutierrez was charged with both federal and state crimes.  His state proceedings moved first, and in October 2021, he pleaded guilty to two counts of aggravated assault with a deadly weapon against a household member.  He was

sentenced to two years of imprisonment, and he was ultimately released on May 5, 2022.

As for his federal charge, Gutierrez was indicted for being a felon in possession of a firearm on August 11, 2020, while he was jailed in an Albuquerque detention facility. Federal agents delivered the indictment and arrest warrant to the facility, but jail officials never notified Gutierrez of the federal charge. In fact, Gutierrez only learned about the federal charge the day he was released from state custody.

And that is in part because nothing happened in his federal case after the indictment, while Gutierrez was in state custody and his state proceedings were ongoing. The lull, the government explains, was due to the COVID-19 pandemic. When Gutierrez was indicted, which was in the summer of 2020, both federal and state governments had declared a public health emergency because of COVID-19. The U.S. Marshals Service in New Mexico had instructed the U.S. Attorney's Office not to file writs for federal defendants in state custody from May 2020 to early March 2022. As a result, the federal government had no choice but to put Gutierrez's case on ice.

Eventually, federal officials took custody of Gutierrez on May 5, 2022—one day after he completed his state sentence. His federal case then moved swiftly. Three days after he completed his state sentence, Gutierrez was appointed counsel for his federal case, made an initial appearance, and his arraignment and detention hearing was held on May 11, 2022. That same day, his trial was set for July 18,

3

2022. Soon after, on May 30, 2022, Gutierrez moved to continue his trial for 60 days. The district court granted the motion and reset the trial for September 19, 2022.

But with about a month left before the trial date, Gutierrez moved to dismiss his indictment for violation of his speedy trial right under the Sixth Amendment. The relevant delay period was about two years, starting from August 2020, when he was federally indicted, to the date of his scheduled trial.

### B. District Court Denies Gutierrez's Sixth Amendment Claim, and Gutierrez Pleads Guilty

Applying the multi-factor test in *Barker v. Wingo*, 307 U.S. 514 (1972), the district court denied Gutierrez's motion to dismiss. The district court found that the delay in the federal case was justified because of complications caused by the pandemic, and Gutierrez failed to show any prejudice caused by the delay. To be sure, Gutierrez argued the government's failure to prosecute his case swiftly (while he was serving his state sentence) caused him to forfeit an argument he could have made at sentencing under U.S.S.G. § 5G1.3, which he claims would have resulted in a lower guideline range, and in turn, a lower sentence.[1] But the district court was unpersuaded, rejecting the argument that sentencing issues can count as prejudice under the Speedy Trial clause, and finding the court can (and in fact, later did)

---

[1] Section 5G1.3(b) states if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction," the court must "adjust the sentence" for the "instant offense" and allow it to "run concurrently to the remainder of the undischarged term of imprisonment."

modify the sentence on the back end to credit Gutierrez's time in state prison, if he was found guilty. Because Gutierrez failed to show he suffered any prejudice, the court denied the motion to dismiss.

Two weeks after the district court denied his speedy trial claim, Gutierrez pleaded guilty. As part of his plea agreement, he agreed to waive his right to appeal his "conviction and sentence," including the "manner in which the sentence [i]s determined or imposed." R., Vol. I. at 123–24. He retained the right to appeal the district court's denial of his Sixth Amendment claim. *Id.* at 124.

### C.    *District Court Applies Upward Departure to Gutierrez's Sentence and Credits His Time Served in State Prison*

The district court determined a guideline range of 37–46 months applied to Gutierrez. The court then found an upward departure was warranted under U.S.S.G. § 5K2.6, which allows for a "substantial sentence increase" if there is a "discharge of a firearm" in the commission of the offense. With the upward departure, the court found that a 70-month sentence was appropriate. Still, the court considered that Gutierrez had served 24 months for his state charge and deducted those months from the 70-month sentence. So ultimately, Gutierrez was sentenced to 46 months of imprisonment, which was still within the guidelines range.

## II.    Discussion

Gutierrez argues the government's two-year delay in proceeding with his federal case violated his Sixth Amendment right to a speedy trial. He also appeals

5

his sentence, which the government argues he waived the right to do as part of his plea agreement.

### A.     Sixth Amendment's Speedy Trial Clause

The Sixth Amendment guarantees "the accused . . . the right to a speedy and public trial." U.S. CONST. amend. VI. This right stretches back to the "very foundation of our English law heritage," and was included even in Magna Carta (1215), where it was written, "we will not deny or defer to any man either justice or right." *Klopfer v. State of N.C.*, 386 U.S. 213, 223 (1967).

In determining whether the speedy trial right has been violated, we apply a multi-factor balancing test set forth by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). We consider "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *United States v. Medina*, 918 F.3d 774, 780 (10th Cir. 2019) (citation omitted).

"No single factor is determinative or necessary," and "all four are considered to determine whether a violation has occurred." *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010) (citation omitted). "But the lack of prejudice is 'nearly fatal' to a claim." *United States v. Nixon*, 919 F.3d 1265, 1278 (10th Cir. 2019).

#### 1.     Length of Delay and the Defendant's Assertion of his Speedy Trial Right

We begin with the first and third *Barker* factors, since neither party disputes they favor Gutierrez. The first *Barker* factor—the length of delay—is the gatekeeper,

6

and we only proceed to the other *Barker* factors if the delay itself is long enough to be "presumptively prejudicial." *United States v. Frias*, 893 F.3d 1268, 1272 (10th Cir. 2018). That requirement is met here. We have held that "delays approaching one year" are "presumptively prejudicial," and neither party disputes the delay here exceeded that length. *Id.* (internal brackets omitted).

The third factor is also straightforward, since the government does not dispute Gutierrez asserted his speedy trial right in a timely fashion.

### 2.    *Reasons for the Delay*

Next, we consider the reasons for the delay. The government bears the burden of providing reasons that justify any delay extending past the constitutional requirements for a speedy trial. *Seltzer*, 595 F.3d at 1177. Here, the government argues the COVID-19 pandemic prevented it from moving Gutierrez's case forward, and since this court has held "COVID-19 [is] a truly neutral justification—not favoring either side"—the government contends the second factor weighs in neither party's favor. *United States v. Keith*, 61 F.4th 839, 853 (10th Cir. 2023).

We agree. Because "[t]he extenuating circumstances brought about by the pandemic prevented the government from trying [Gutierrez] in a speedy fashion," this second factor cuts in neither party's favor. *Id.* When Gutierrez was federally indicted, he was already in state custody, going through state court proceedings. During that time, the U.S. Marshals Service had advised the U.S. Attorney's Office not to file writs for federal defendants in state custody from May 2020 to early

March 2022 to prevent the spread of COVID-19.[2] The government had its hands tied. To be sure, starting February 14, 2022, federal jury trials in New Mexico resumed from suspension, and in March 2022, the U.S. Marshals Service lifted its order. At that point, the government could have sought custody of Gutierrez but did not do so because it waited for New Mexico officials to notify it that he was available for federal detention. The government finally obtained custody of Gutierrez on May 6, 2022. That delay, the district court held, was on the government. But apart from this delay of a few months, the government was bound by the rules and complications caused by COVID-19, and its delay was reasonable.

Still, Gutierrez says COVID-19 was not a "truly neutral justification" here because the government could have used videoconferencing to move his case forward. But the use of videoconferencing was limited. No doubt, with the defendant's consent, certain procedural matters could have proceeded via videoconferencing, such as arraignments, pretrial release revocations, and probation

---

[2] According to Gutierrez, the government supplied "no concrete support" to show the U.S. Marshals Service had instructed the U.S. Attorney's Office not to file writs for defendants in state custody. Aplt. Br. at 7. But the district court made this factual finding below. *See, e.g.*, R., Vol. I at 108 ("[I]n early March 2022, the Marshals lifted their instructions to the United States Attorney's Office not to seek writs for federal defendants in state custody."). We review factual findings for clear error, *see United States v. Garcia*, 59 F.4th 1059, 1065 (10th Cir. 2023), and Gutierrez has not shown the district court clearly erred in making this finding.

Moreover, the district court found the government's delay was justified to prevent the spread of COVID-19 and not just because the U.S. Marshal's policy was in place. In other words, this policy was not the only reason for the court's finding that the government's delay was reasonable.

and supervised release revocations. *See* Order Authorizing Video and Teleconferences in Criminal Proceedings Under the Coronavirus Aid, Relief and Economic Security Act, No. 20-MC-0004-12 (D.N.M. 2020) (Dkts. 12, 25). But that was it. Apart from arraignment, physical appearances would have been necessary to proceed with the federal case—including a jury trial, if the case were to go the distance. *Id.* True, a felon-in-possession charge is usually a simple case, but courts cannot assume certain charges—even felon-in-possession charges—will plead out or resolve in the early stages of a case. We assume the *opposite*: that the accused is innocent. Moreover, the government and the district court did not know whether Gutierrez would plead guilty, especially because he moved to dismiss the indictment before ultimately pleading guilty. Accordingly, the mere existence of videoconferencing does not establish that the government's delay was unjustified.

The second *Barker* factor is neutral, if only slightly cutting in Gutierrez's favor for the few months delay after the U.S. Marshals Service lifted its order. But the delay caused by COVID-19 does not favor either party.

### 3.    Prejudice to the Defendant

Finally, we consider whether Gutierrez was prejudiced by the delay.

"The individual claiming the Sixth Amendment violation has the burden of showing prejudice." *Seltzer*, 595 F.3d at 1179. "We assess prejudice in light of the interests that the speedy trial right was designed to protect." *Id.* To that end, the Supreme Court has explained the Speedy Trial clause is focused on the preconviction phase of a case and "reflect[s] the concern that a *presumptively innocent person*

should not languish under an unresolved charge." *Betterman v. Montana*, 578 U.S. 437, 443–44 (2016) (emphasis added).

This is consistent with the Sixth Amendment's historical backdrop. "At the time of the Founding, leading common law commentators and landmark English legislation addressing trial timing . . . identified *pretrial* detention . . . as a key concern." Akhil Reed Amar, *Sixth Amendment First Principles*, 84 GEO. L.J. 641, 659 (1996) (emphasis added). This concern makes sense, since the speedy trial right, which was linked to the writ of habeas corpus, first emerged in response to monarchs "imprison[ing] enemies of the crown in the Tower of London" and allowing them to languish there "without permitting them access to courts" at all. George Thomas, *Speedy Trial Clause*, *in* THE HERITAGE GUIDE TO THE CONSTITUTION 448, 448–49 (David F. Forte & Matthew Spalding eds., 2d ed. 2014). Sir Edward Coke, whose views influenced the Framers' understanding of the speedy trial right, believed "the delay in *trial*, by itself, would be an improper denial of justice." *Klopfer*, 386 U.S. at 224 (emphasis added). He wrote, "the *innocent* shall not be worn and wasted by long imprisonment, but . . . speedily come to his *trial*." *Betterman*, 578 U.S. at 442–43 (quoting 1 E. COKE, SECOND PART OF THE INSTITUTES OF THE LAWS OF ENGLAND 315 (1797)) (internal brackets omitted). In other words, Coke believed a speedy trial was essential to protect the presumptively innocent. After all, when the government drags its feet in prosecuting a case, it undermines the presumption of innocence and tips the scales in its favor, since the accused—who is presumed to be innocent—can be subject to pretrial incarceration for a prolonged period of time, or worse yet, lose

his ability to mount a defense, thereby "skew[ing] the fairness of the entire system." *Seltzer*, 595 F.3d at 1179–80.

Recognizing these concerns, we have identified three main forms of prejudice stemming from a speedy trial violation: (1) "the prevention of oppressive pretrial incarceration"; (2) "the minimization of anxiety and concern of the accused"; and (3) "minimization of the possibility that the defense will be impaired." *Id.* at 1179. "The final interest is the most important," and the defendant should show "that the delay resulted in the loss of specific evidence or the unavailability of certain witnesses." *Frias*, 893 F.3d at 1273 (citation omitted). The longer the delay, one can easily imagine scenarios in which witnesses' memories fade, witnesses become unavailable, evidence gets lost, or the defendant is unable to recount the significance and circumstances of any evidence. Ultimately, the defendant loses his fair shot at defending his innocence at trial, which is exactly what the Speedy Trial clause was meant to protect.

But Gutierrez has suffered none of the above. Although he argues the government's delay impaired his defense, he does not argue the delay affected the defense of his innocence. Rather, he claims the government's delay prejudiced arguments he could have made at *sentencing*, after he pleaded guilty. According to Gutierrez, if his federal case had moved more swiftly (*i.e.*, while he was serving his state sentence), the district court would have been required to apply § 5G1.3(b) at his federal sentencing, which he claims would have lowered his federal guideline range to account for his state sentence, and in turn would have led to a lower federal

11

sentence. Section 5G1.3(b) allows a federal sentence to run concurrently with a state sentence. *See supra* note 1.

Putting aside the merits of that claim, this argument fails for a simpler reason: the Speedy Trial clause does not extend to postconviction sentencing. Consider the Sixth Amendment's text, which uses the words (1) the "accused," as opposed to the convicted, and (2) the right to "trial," as opposed to any proceeding that comes afterward. *See Betterman*, 578 U.S. at 439, 443–44 (noting that the distinctions between "accused" and "convicted" and "trial" and "sentencing" are supported by both the historical and current understanding of "the Sixth Amendment language"). Based on this text and the historical understanding of the speedy trial right as explained above, the Supreme Court has reasoned that the Speedy Trial clause was a "measure protecting the presumptively innocent" and therefore goes no further than "arrest or indictment through conviction," or in this case, after the defendant has "pleaded guilty to criminal charges." *Id.* at 439, 441–42. Accordingly, harms suffered *after* the defendant has lost his presumption of innocence are irrelevant under the Speedy Trial clause.

We have never recognized postconviction sentencing as a cognizable form of prejudice for a speedy trial violation, *see United States v. Jumaev*, 20 F.4th 518, 543 (10th Cir. 2021) (finding no case that has "treated the sentence imposed *post*-conviction as relevant to assessing the constitutional validity of *pre*trial proceedings"), and indeed, "the Supreme Court has suggested that the prejudice must come from oppressive incarceration before the trial (rather than after it)." *Nixon*,

12

919 F.3d at 1275 (emphasis added). We know of no case that supports the argument Gutierrez makes.[3]

Resisting this conclusion, Gutierrez points to two cases, *Wiggins v. Smith*, 539 U.S. 510, 536 (2003), and *United States v. Horey*, 333 F.3d 1185, 1186 (10th Cir. 2003). Gutierrez contends these cases support the argument that sentencing is an "essential part of a defense," and the government's delay impaired that defense. Reply Br. at 8. But "defense" is not defined so broadly under the Speedy Trial clause, and neither of those cases says otherwise (nor were they even about the Speedy Trial clause). As we explained above, the Speedy Trial clause does not cover "defense" from a case's start to finish, but only to defenses from "arrest or indictment through conviction." *Betterman*, 578 U.S. at 441. Gutierrez pleaded guilty, and the Speedy Trial clause "does not apply once a defendant . . . has pleaded

---

[3] Even if sentencing was a cognizable harm under the Speedy Trial clause, Gutierrez's claim would still fail. At bottom, Gutierrez misunderstands how § 5G1.3(b) works. As stated above, § 5G1.3(b) states if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction," the court must "adjust the *sentence*" for the "instant offense" and allow it to "run concurrently to the remainder of the undischarged term of imprisonment." So contrary to what Gutierrez argues here, § 5G1.3(b) speaks to the defendant's *sentence* and not the guideline range. This interpretation of § 5G1.3(b) is bolstered by Application Note 2(D), which supplies a concrete example of how § 5G1.3(b) operates. Application Note 2(D) states the court must *first* determine the sentence in accordance with the defendant's guideline range, which is the "appropriate total punishment," and *then* allow that sentence to run concurrently with any "undischarged term of imprisonment." So, although Gutierrez did not have his federal and state sentences run concurrently, the district court properly adjusted the federal sentence afterward by crediting the two years he served in state prison. As a result, Gutierrez received all the benefit he would have received if § 5G1.3(b) had applied.

guilty to criminal charges." *Id.* at 439.  Since the Speedy Trial clause provides no legal entitlements at the sentencing stage, Gutierrez's alleged harm at sentencing is not cognizable under the Speedy Trial clause.

In case there is any lingering doubt, consider the remedy for a speedy trial violation: a complete dismissal of all the charges.  *Id.* at 444.  That remedy makes sense if the government dragged its feet and prejudiced the defendant's ability to defend his innocence at trial.  There, the remedy of complete dismissal would only affirm what was already assumed: the defendant is innocent.  But that remedy does not make sense if the defendant's harm came at sentencing.  To dismiss all charges for an alleged harm at sentencing, after the defendant is found guilty, would be a windfall for the defendant.  The cure would be too strong for the alleged disease.  At bottom, the use of the Speedy Trial clause for a sentencing error fits no more than a square peg in a round hole.

As for prejudice that actually counts, Gutierrez has suffered none.  Gutierrez says he suffered "anxiety and insomnia" from the government's delay but does not explain how his anxiety and insomnia "distinguishes his case from that of any other arrestee awaiting trial."  *United States v. Muhtorov*, 20 F.4th 558, 654 (10th Cir. 2021).  His claims are "generalized" and "conclusory," which is not enough to show prejudice.  *Id.*; *see also Keith*, 61 F.4th at 854.  Gutierrez also claims he suffered oppressive pretrial incarceration, but the federal delay had nothing to do with that. He would have been in prison until May 5, 2022, even if his federal case pressed forward because of his state sentence.  *See Frias*, 893 F.3d at 1273 (finding "no

oppressive pretrial incarceration" because the defendant "still would have been in custody on the state murder charge and thereafter when she was sentenced by the state court"). As for his federal pretrial incarceration, Gutierrez was in federal pretrial detention for less than one month after he was released, until he (not the government) caused delay by moving to continue his trial date.[4] One month of pretrial incarceration is not "oppressive" under *Barker*. *Cf. Muhtorov*, 20 F.4th at 655 (finding six-and-a-half years of pretrial incarceration to be oppressive); *Jumaev*, 20 F.4th at 542 (10th Cir. 2021) (six years of pretrial incarceration was oppressive).

Gutierrez has failed to show any prejudice from the government's delay.

### 4.    *Balancing the* Barker *Factors*

In sum, two factors—the length of delay and assertion of the speedy trial right—favor Gutierrez. The reason for the delay is neutral, or at best, mildly favors Gutierrez. But the lack of prejudice is critical, and as we have held, can "eviscerate the defendant's claim." *United States v. Margheim*, 770 F.3d 1312, 1329 (10th Cir. 2014). That is the case here. The government's delay was justified because of the pandemic, and the federal proceeding would have yielded no different result had Gutierrez's federal case started sooner.

Gutierrez has not shown a constitutional speedy trial violation.

---

[4] Gutierrez's time in prison after he pleaded guilty is irrelevant because, as explained above, the Speedy Trial clause does not apply after a guilty plea. *See Betterman*, 578 U.S. at 439.

15

### B.    Appellate Waiver

In addition to his Sixth Amendment claim, Gutierrez argues the district court erred by applying § 5K2.6 to enhance his sentence. That provision allows the district court to "increase the sentence above the authorized guideline range" if a "weapon or dangerous instrumentality [i]s used"—especially the "discharge of a firearm." U.S.S.G. § 5K2.6. The government argues Gutierrez waived his right to appeal his sentence under his plea bargain.

So, the threshold question is whether Gutierrez "waived his appellate rights in an enforceable plea agreement." *United States v. Hahn*, 359 F.3d 1315, 1324 (10th Cir. 2004). To answer that question, we keep in mind that "contract principles govern plea agreements." *Id.* at 1324–25. The court considers three factors in determining whether to enforce an appellate waiver: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.* at 1325.

Only the first and third factors are relevant here, and both cut in the government's favor.

### 1.    Scope of Waiver

Gutierrez's plea agreement only reserved the right to appeal the district court's order on his speedy trial claim. Gutierrez waived the right to raise "any challenge to the manner in which the sentence was determined or imposed, including the district court's authority to make findings supporting the sentence." R., Vol. I at 123–24.

16

Gutierrez's challenge to the application of § 5K2.6 falls squarely within his waiver for two reasons. First, the district court's use of § 5K2.6 was the "manner" in which Gutierrez's sentence was determined. After all, the court relied on that section to apply an upward departure to his sentence. Second, the waiver only reserved Gutierrez's right to appeal the district court's order on his motion to dismiss, which was about his speedy trial claim. Section 5K2.6 did not feature in the order at all.

Gutierrez responds, however, that his challenge to the district court's use of § 5K2.6 is intimately bound up with his speedy trial claim and therefore falls within the waiver's exception. Recall, Gutierrez claimed the government's delay "prejudiced" him because he was unable to assert § 5G1.3(b) and get the benefit of having his state and federal sentences run concurrently. To be sure, the district court cured this on the back end by deducting two years from his federal sentence. But Gutierrez contends the district court applied § 5K2.6 to *enhance* his sentence, which effectively canceled the two-year credit he received for his state sentence and allowed "the prejudice caused by the speedy trial violation [to go] unmitigated." Aplt. Br. at 37. As a result, Gutierrez argues, the district court's use of § 5K2.6 is inherently tied with the speedy trial claim.

This argument is unpersuasive. To begin, the district court's application of § 5K2.6 had nothing to do with the alleged speedy trial violation and can apply even if a speedy trial violation had *not* occurred. The two are not inextricably bound together. Moreover, whether § 5K2.6 effectively "voided" the two-year credit to his state sentence is of no moment. If that argument were valid, the district court was

17

barred from enhancing his sentence at all—even if legally warranted—since any sentence enhancement would have chipped away at the two-year credit he received. Getting credit for his state sentence did not immunize Gutierrez from sentence enhancements for his federal crime—and the same would have been true if § 5G1.3(b) had applied.  If anything, it is *Gutierrez* who bears the responsibility for § 5K2.6 applying here.  That enhancement only came into play because he fired his gun outside his estranged wife's home, threatening her and others.  If he had not done so, § 5K2.6 would not even be relevant.

At bottom, the district court's use of § 5K2.6 in determining the sentence is precisely one of those items Gutierrez agreed to waive.  Moreover, the district court's use of § 5K2.6 is not bound up with his speedy trial claim.  Those are two separate inquiries, and Gutierrez has not shown otherwise.  His challenge to his sentence falls comfortably within his waiver.

### 2.    Waiver's Unlawfulness

Lastly, Gutierrez fails to show that enforcing his waiver would result in a miscarriage of justice.  This court has held injustice results only "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful."  *United States v. Smith*, 500 F.3d 1206, 1212 (10th Cir. 2007) (citation omitted).

18

Gutierrez makes his claim based on the fourth ground. "For the waiver to be invalid on the ground of unlawfulness, the unlawfulness must 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007).

Gutierrez's argument on this score misses the mark. Rather than showing why the waiver is unlawful, as he must, Gutierrez challenges his *sentence*, arguing that enforcing the waiver would allow the district court to get away with an alleged error in its guideline calculation.

But this court has rejected that exact argument, holding the unlawfulness must go to the waiver itself, not the sentence. In *United States v. Holzer*, 32 F.4th 875, 887 (10th Cir. 2022), this court stated that, in determining whether an appellate waiver is unlawful, the "inquiry is not whether the sentence is unlawful, but whether the *waiver* itself is unlawful because of some procedural error or because no waiver is possible." (emphasis added). And this makes sense, since "[t]o allow alleged errors in computing a defendant's sentence to render a waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive." *Smith*, 500 F.3d at 1213. "An appeal waiver is not 'unlawful' merely because the claimed error would, in the absence of waiver, be appealable. To so hold would make a waiver an empty gesture." *Sandoval*, 477 F.3d at 1208.

This reasoning is on all fours here. Gutierrez cannot argue the waiver is unlawful by pointing to errors in his sentence, since that is precisely the risk he assumed by agreeing to the waiver in the first place. This court has repeatedly

19

rejected arguments like this in previous cases. *See United States v. McCrary*, 43 F.4th 1239, 1247–48 (10th Cir. 2022) (same); *Smith*, 500 F.3d at 1212–13 ("Ms. Smith misunderstands the miscarriage of justice exception to enforcement of a waiver of appellate rights. This exception looks to whether the waiver is otherwise unlawful, not to whether another aspect of the proceeding may have involved legal error." (internal quotation marks and citation omitted)); *Sandoval*, 477 F.3d at 1208 ("Our inquiry is not whether the sentence is unlawful, but whether the waiver itself is unlawful because of some procedural error or because no waiver is possible.").

All these cases are consistent with—and indeed, based on—this court's en banc opinion in *Hahn*, 359 F.3d at 1327. Still, Gutierrez points to one sentence in *Hahn*, where we noted that, in determining whether a waiver is "otherwise unlawful," the court must also examine whether the error "seriously affects the fairness, integrity or public reputation of judicial proceeding *as that test was employed in United States v. Olano*, 507 U.S. 725, 732 (1993)." 359 F.3d at 1327 (emphasis added) (internal quotation marks and brackets omitted). Gutierrez hangs his hat on the *Olano* test and cites *Rosales-Mireles v. United States*, 585 U.S. 129, 132, 135 (2018), which applied *Olano* and found sentencing errors "affect the fairness, integrity, or public reputation of judicial proceedings." Gutierrez argues this court should do the same here.

But putting aside that *Rosales-Mireles* does not help him,[5] Gutierrez misreads *Hahn*. *Hahn* stated a defendant cannot show a miscarriage of justice "*unless*" he can

---

[5] *Rosales-Mireles* does not help Gutierrez. That case concerned a direct challenge to a district court's error in guideline range calculation. 585 U.S. at 135.

show the "*waiver* is otherwise unlawful." 359 F.3d at 1327 (emphases added). The *Olano* test does not change that fact but only adds the alleged error must also "affect the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal brackets omitted) ("We *further* hold that to [show] . . . the waiver is otherwise unlawful—"the error [must] seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings[,]" as that test was employed in *United States v. Olano*") (emphasis added). Indeed, we have stated the relevant question under *Hahn* is "whether the *waiver* is otherwise unlawful" and "not . . . whether another aspect of the [sentencing] proceeding may have involved legal error." *Holzer*, 32 F.4th at 887 (internal quotation marks omitted). But Gutierrez "has not alleged, let alone established, that the appellate waiver is otherwise unlawful." *Id.*

Because the waiver captures Gutierrez's challenge to his sentence, and Gutierrez has not shown his waiver is unlawful, we find the appellate waiver applies and is enforceable.

### III.  Conclusion

For the reasons stated above, we affirm.

---

The Supreme Court therefore analyzed whether *that* error—*i.e.*, the lower court's error in calculating the guideline range—"seriously affect[ed] the fairness, integrity, and public reputation of judicial proceedings" under *Olano. Id.* at 132. By contrast, Gutierrez is challenging his waiver but argues the error lies in his sentence. Under *Rosales-Mireles*, he must show there was something wrong with the waiver itself—not his sentence—since *that* is what he is challenging.